Dear Mr. Frederick G. Davis
At the suggestion of the Legislative Auditor, your predecessor requested our opinion concerning the propriety of certain transfers of funds between special funds administered by the Maryland Energy Administration ("MEA"). Specifically, he asked whether it was permissible for the Director of MEA to transfer funds from the Community Energy Loan Program ("CELP") Fund to the State Agency Loan Program ("SALP") account of the Energy Overcharge Restitution Fund ("Restitution Fund"). The CELP Fund was originally capitalized with moneys from the Restitution Fund. Both the CELP Fund and Restitution Fund are administered by MEA.
In our opinion, moneys in the CELP Fund may only be spent in accordance within the statute creating that fund; a transfer of funds to the SALP account is not currently authorized by that statute. Excess or unestimated receipts in the CELP Fund may be transferred to another fund by an approved budget amendment. Thus, funds may be transferred from the CELP Fund to the SALP account only if the General Assembly passes a law authorizing such a transfer or expanding the purposes of the CELP Fund or if an appropriate budget amendment is approved in accordance with State law.
 I Background
A. Energy Overcharge Restitution Fund
The Energy Overcharge Restitution Fund ("Restitution Fund") is a special fund created in 1989 primarily to hold the State's share of restitution paid by various companies in settlements of actions brought by the federal Department of Energy for violations of federal oil price controls during the period between January 1975 and the end of those controls in January 1981. Chapter 526, Laws of Maryland 1989, codified in Annotated Code of Maryland, State Finance Procurement Article ("SFP"), § 7-315.[1] The Restitution Fund is also to receive any gifts expressly given to the State for energy assistance or weatherization for individuals. SFP § 73-15(b)(2)(ii).
The statute specifically authorizes the use of money in the Restitution Fund for various energy assistance, conservation, and weatherization programs. SFP § 7-315(f)(2). They include:
 • assistance to households under the State Energy Assistance and Information Act.[2] SFP § 7-315(f)(2)(i)-(ii).
 • energy assistance and weatherization programs provided through the MEA and the Community Development Administration of the Department of Housing and Community Development. SFP § 7-315(f)(2)(iii).
 • energy extension service and low income home energy programs under 42 U.S.C. §§ 7001 et seq., 8621 et seq. SFP § 7-315(f)(2)(iv).
 • other energy assistance or weatherization programs satisfying federal guidelines for the use of overcharge restitution funds. SFP § 7-315(f)(2)(v).
 • "energy conservation programs" encompassed by specified federal laws.[3] SFP § 7-315(f)(2)(vi).
 • the State Energy Efficiency and Economic Development Loan Program.[4] SFP § 7-315(f)(2)(vii).
 • the Community Energy Loan Program. SFP § 7-315(f)(2)(viii).
 • "any other purpose required as a condition of . . . acceptance [of the funds]." SFP § 7-315(f)(2)(ix).
The Legislature has charged the Director of MEA with the task of assessing needs and making recommendations to the Governor for the use of the Restitution Fund. SFP § 7-315(e).
Expenditures are to be made from the Restitution Fund in accordance with the State budget or an approved budget amendment. SFP § 7-315(d).[5] Disbursements from the Restitution Fund are to supplement rather than supplant funds that are otherwise available for energy assistance programs under State or federal law. SFP § 73-15(f)(4).
In connection with the Restitution Fund, the Treasurer maintains seven revenue accounts corresponding to settlements of seven cases providing for restitution to consumers through the states.[6] Each settlement contains somewhat different restrictions on the use of funds. An eighth account is dedicated to the SALP. Your predecessor advised that, while these accounts have not been codified as special funds by statute, the Treasurer has treated the accounts as though they were separate funds, as opposed to a single Restitution Fund with separate sub-accounts. The Legislature has also created a second special fund for moneys appropriated from the Restitution Fund for one of its purposes —i.e., the Community Energy Loan Program Fund ("CELP Fund").
The State's annual budget bill typically makes appropriations for both CELP and SALP under the MEA portion of the budget; each is designated as a "capital appropriation — special fund appropriation." See, e.g., Chapter 443, Laws of Maryland 2005 at pp. 2096-97. Those appropriations are made, respectively, from the CELP Fund and the SALP account of the Restitution Fund.
B. Community Energy Loan Program
As indicated above, CELP is specifically identified in the statute governing the Restitution Fund as a permissible use of moneys in the Restitution Fund.[7] SFP § 7-315(f)(2)(viii). CELP itself is currently codified at Annotated Code of Maryland, State Government Article ("SG"), § 9-2101 et seq.;[8]see also COMAR 14.26.01. Under CELP, MEA makes low-interest loans available to promote energy efficiency and conservation in buildings owned by local governments or nonprofit organizations, including hospitals and schools. SG § 9-2103. MEA indicates that CELP funds approximately $1.5 million in new projects each fiscal year. Seewww.energy.state.md.us/programs/government/community energyloan.htm.
As a repository for funds devoted to CELP, the Legislature created the CELP Fund; it consists of moneys appropriated from the Restitution Fund, moneys received from other public or private sources for CELP, interest on the CELP Fund's earnings, and repayments of loans. SG § 9-2107(a). The MEA is to use the CELP Fund to make loans and pay the expenses of CELP. SG § 9-2107(c). MEA is to reserve a portion of the CELP Fund specifically for loans to schools and hospitals. SG § 9-2107(b); COMAR 14.26.01.08. The statute does not authorize the expenditure of moneys from the CELP Fund for the SALP or any of the other purposes of the Restitution Fund.
C. State Agency Loan Program
SALP was created in 1991 as a revolving loan account within the Restitution Fund to make loans to State agencies for cost-effective energy efficiency improvements in State facilities. SALP was developed by MEA, then known as the Maryland Energy Office and part of the Department of Housing and Community Development, to enhance energy savings in State agencies. The SALP account was capitalized with funds from one of the restitution accounts within the Restitution Fund.[9]
According to MEA, loans from the Restitution Fund totaling approximately $1 million are appropriated each year for SALP. While an agency pays no interest on a loan, it does pay a 1% administrative fee to the Restitution Fund. As noted above, unlike CELP, SALP is not codified in statute and does not have its own special fund created by statute.
D. Legislative Audit
During a recent audit of MEA, the Legislative Auditor questioned two transfers of money from the CELP Fund to the SALP account. In December 2001 the MEA transferred $500,000 from the CELP Fund to the SALP account. A similar transfer of $400,000 was effected in November 2004. The transfers were apparently done to fund additional loans to State agencies through SALP. Your predecessor indicated that the purpose of the transfers was to ensure that the SALP account would remain solvent while awaiting repayment of loans.
MEA management believed that the Director of MEA had authority to make the transfers in connection with the annual budget process. We understand that both transfers were included in MEA's submissions to the Department of Budget and Management ("DBM") as part of DBM's coordination of the State's capital project program under SFP § 3-601 et seq. Apparently, the transfers were included in materials submitted to DBM in revenue spreadsheets for CELP and SALP that detailed the projected revenue for both programs, but were not identified as budget amendment requests. As we understand it, the transfers were not reflected in any appropriation in the operating budget or capital budget bills.[10]
The Auditor questioned the legality of the transfers and recommended that MEA obtain an opinion from the Attorney General on the issue.
 II Analysis
The issue raised by the Auditor concerns the transfer of moneys from one special fund — the CELP Fund — to an account in another special fund — the SALP account in the Restitution Fund.
Moneys appropriated to a special fund may only be expended in accordance with the law governing that fund. See
89 Opinions of the Attorney General 172, 177-78 (2004). Unspent moneys appropriated to a special fund remain in that fund and do not revert to the general fund. SFP § 7-304. Thus, the moneys appropriated to the CELP Fund in the various budgets since the inception of that fund are to be expended for the purposes set forth in the law creating the CELP Fund. Unless the Legislature enacts a law that transfers those funds to another fund or authorizes their use for other purposes, the MEA has no authority to devote them to any other purpose — e.g., transfer them to the SALP account or otherwise return them to the Restitution Fund.
Your predecessor indicated that information concerning the 2001 and 2004 transfers was provided to DBM as part of the "capital budget process." However, we understand that transfers were not part of any appropriation in either the operating budget or capital budget bill. Even if they had been, neither the operating budget bill[11] nor capital budget bill[12] could ordinarily authorize such a transfer. Unless the transfers were authorized in laws passed by the Legislature or in an approved budget amendment, the transfers would not be valid. In any event, it appears that neither the annual budget bills nor the capital budget bills for the pertinent fiscal years purport to authorize such transfers. Moreover, we are unable to locate any provision specifically authorizing the transfers in any bills enacted by the Legislature during the relevant time period.
In sum, MEA lacked legal authority to transfer funds from the CELP Fund to the SALP account. However, it is perhaps not surprising that there might be some confusion on the MEA's authority to transfer funds from the CELP Fund to other authorized purposes of the Restitution Fund. Our answer to your question results from the fact that the Legislature has established the CELP Fund as a special fund by statute and not just as an account within the Restitution Fund. Had the moneys designated for CELP simply been part of an account within the Restitution Fund, they could have been transferred to any of the other accounts within that Fund without special action by the Legislature. Appropriation of the funds to that purpose as part of the budget process or in an authorized budget amendment would have been sufficient.
Finally, we discuss the extent to which moneys in the CELP Fund might be transferred to the SALP account in the Restitution Fund by means of a budget amendment. In 71 Opinions of the AttorneyGeneral 3, Attorney General Sachs concluded that unestimated and excess receipts could be transferred from one special fund to another special fund under the laws governing budget amendments if the law governing special fund that was the source of the transfer did not prohibit the transfer. See also
89 Opinions of the Attorney General 172, 181 (2004) (transfer by budget amendment not permitted when statute governing the special fund prohibited transfer). The statute governing the CELP Fund does not prohibit a transfer of excess or unestimated receipts to the Restitution Fund. Thus, in our view, funds could be transferred from the CELP Fund back to the Restitution Fund by an approved budget amendment. However, as we understand it, the transfers in question were not effected by budget amendment.
 III Conclusion
In our opinion, moneys in the CELP Fund may only be spent in accordance within the statute creating that fund; expenditure for purposes of the SALP is not currently authorized by that statute. Excess or unestimated receipts in the CELP Fund may be transferred to another fund by an approved budget amendment. Thus, funds may be transferred from the CELP Fund to the SALP account only if the General Assembly passes a law authorizing such a transfer or expanding the purposes of the CELP Fund or if a budget amendment is approved in accordance with State law.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] The Restitution Fund is the successor of the Energy Overcharge Restitution Trust Fund, which was originally created in 1984 for the same purposes. Chapter 759, Laws of Maryland 1984. The history of energy overcharge litigation and the creation of a special fund to hold the proceeds of the restitution orders are recounted in 71 Opinions of the AttorneyGeneral 226 (1986).
[2] Annotated Code of Maryland, Article 41, § 6-401 et seq.
[3] Those laws include Pub.L. 97-377, 96 Stat. 1830, § 155 (1982), and the State Energy Programs Improvements Act of 1990, Pub.L. 101-440, 104 Stat. 1006 (1990).
[4] Annotated Code of Maryland, State Government Article, § 9-20A0-1 et seq.
[5] Although the statute requires that any budget amendment be submitted to and approved by the Legislative Policy Committee prior to the expenditure or obligation of funds, this Office has previously advised that the requirement of legislative "approval" of an administrative budget amendment could be held to be an unconstitutional legislative veto. See Letter of Attorney General J. Joseph Curran, Jr. to Governor Robert L. Ehrlich, Jr. concerning House Bill 147 (May 19, 2005) at pp. 6-7.
[6] The cases are generally referred to by the following names: Exxon, National Helium, Diamond Shamrock, Kansas Stripper Well, Amoco II, Amoco Belridge, and Cities Service.
[7] The federal Department of Energy approved the use of restitution proceeds for CELP in a letter dated June 18, 1989.
[8] CELP was originally created in 1989 as a program of the Department of Housing and Community Development. Chapter 421, Laws of Maryland 1989, codified at Article 83B, § 4-901 etseq. It was recodified and transferred to MEA in 1991. Chapter 468, Laws of Maryland 1991.
[9] The State received approval from the federal Department of Energy to use funds from the Stripper Well settlement for SALP. Department of Energy response to State's Eighth Proposal for Use of Stripper Well Funds (April 12, 1990).
[10] Appropriations to fund some of the State's capital projects appear in the annual operating budget.
[11] When the General Assembly establishes a special fund dedicated to specific purposes, the annual budget bill may only appropriate money from that fund for the statutorily-identified purposes. See 89 Opinions of the Attorney General 172, 177-78 (2004); 71 Opinions of the Attorney General 3, 4 n. 2 (1986); 20 Opinions of the Attorney General 201, 203-4 (1935). This is based on the principle that the Legislature ordinarily may not "legislate in the budget." 89 Opinions of the Attorney General
at 1777-8. "A budget bill is not a means by which the General Assembly may enlarge the scope of a statute." 81 Opinions of theAttorney General 269, 275 (1996).
[12] The phrase "capital budget bill" is normally used to refer to a supplementary appropriation bill that contains various appropriations for various capital projects. It is enabling legislation for the creation of State debt through the issuance of State of Maryland general obligation bonds, the proceeds of which are used to fund various capital projects. As a supplementary appropriation bill, it must be limited to "some single work, object or purpose." Article III, § 52(8). The Court of Appeals has held that even though a capital budget bill may embrace a variety of projects, its single work or object is the "obtention of funds for State purposes from lenders" — i.e.,
the creation of a State debt. See City of Baltimore v. State,281 Md. 217, 227, 378 A.2d 1326 (1977); Panitz v. Comptroller,247 Md. 501, 513-14, 232 A.2d 891 (1967). This Office has cautioned against the inclusion of provisions in the capital budget bill that are not items of appropriation or related to the administration of the State debt program. See Bill Review Letter concerning House Bill 340 — Capital Budget (May 19, 2005). Thus, it is doubtful whether the capital budget bill could lawfully include a transfer of funds between the CELP Fund and the Restitution Fund, as they do not relate to State debt. *Page 33